Kellie Walters
Legal Services for Prisoners with Children
4400 Market Street
Oakland, CA 94608
(415) 625-7043
kellie@prisonerswithchildren.org

Richard Tan
Law Offices of Richard Tan
1901 Harrison St., Suite 1100
Oakland, CA 94612
(510) 345-3246
richard@richardtanlaw.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN & ALL OF US OR NONE, <br><br> Plaintiffs, <br><br> V. <br><br> GOVERNOR GAVIN NEWSOM, SECRETARY JEFF MACOMBER, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, JOHN DOES 1-10, and THE STATE OF CALIFORNIA <br><br> Defendants. | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> Case No. 3:23-cv-4040 <br><br> **JURY DEMANDED** |

NOW COMES Plaintiff, WILLIAM BROWN and ALL OF US OR NONE, by and through their attorneys, LEGAL SERVICES FOR PRISONERS WITH CHILDREN and RICHARD TAN, and hereby submit this Complaint against Defendants STATE GOVERNOR GAVIN NEWSOM, SECRETARY JEFF MACOMBER, CALIFORNIA DEPARTMENT OF

1   CORRECTIONS AND REHABILITATION, JOHN DOES 1-10, and THE
2   STATE OF CALIFORNIA seeking injunctive and declaratory relief. In
3   support thereof, the Plaintiffs state and allege the following:

## Introduction

4

5   1. This is a civil action seeking relief against GOVERNOR GAVIN
6      NEWSOM, SECRETARY JEFF MACOMBER, CALIFORNIA
7      DEPARTMENT OF CORRECTIONS AND REHABILITATION, JOHN
8      DOES 1-10, and THE STATE OF CALIFORNIA for committing acts
9      under color of law and depriving Plaintiff of rights secured by the
10     Constitution and laws of the United States. In sum, on August 9, 2021,
11     Plaintiff was wrongfully arrested and charged with violating Penal
12     Code §4571. This wrongful arrest violated his First and Fourteenth
13     Amendment rights.

## Jurisdiction

14

15  2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331
16     and 1343 (a); and the Constitution of the United States.
17  3. Venue is proper under 28 U.S.C. §1391(b). The events purported herein
18     substantially occurred in the Northern District of California. All events
19     pertinent to this case arose in the Northern District of California.

## Parties

20

4. At all times relevant to their involvement in this case, WILLIAM BROWN (hereinafter "BROWN") was a United States Citizen who resides in Oakland, California.

5. At all times relevant to their involvement in this case, ALL OF US OR NONE was a nationwide organization project made up formerly incarcerated people, prisoners, and our families.

6. At all times relevant to their involvement in this case, GAVIN NEWSOM was the Governor of the STATE OF CALIFORNIA and is being sued in his official capacity.

7. At all times relevant to their involvement in this case, SECRETARY JEFF MACOMBER was the Secretary for the CALIFORNIA DEPARTMENT OF CORRECTIONS and is sued in his official capacity.

8. At all times relevant to its involvement in this case CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION is organized under the laws of the State of California. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby.

9. At all times relevant to their involvement in this case JOHN DOES 1-10 were law enforcement and correctional officers who were proximately responsible for the events in this case. Plaintiffs do

not know the names of these officers and therefore sue them under the fictional designation until such time as their identity comes to light. Upon information and belief, they include at least two officers in Solano County Sheriffs Dept.; at least one official from the Alameda County Sheriffs Dept.; at least one arresting agent from CDCR Office of Correctional Safety (OCS) and at least one intelligence analyst from OCS Office of Criminal Intelligence and Analysis Unit; at least two officers from the CDCR Division of Adult Parole Operations (DAPO) Oakland field office; at least one officer from the CDCR DAPO Auburn field office; one Lieutenant from the CMF Investigative Services Unit and another Officer from the CMF ISU.

10. At all times relevant to its involvement in the case, THE STATE OF CALIFORNIA was a State of the United States.

11. Upon information and belief, all Defendants are residents of or have the primary place of business in California.

## Factual History

12. The Defendant, through Congress, enacted PC 4571 in 1941, which has since been in effect.

13. PC 4571, in its current form, uses ambiguous, imprecise, and overly broad language, making it impossible for citizens to comprehend its exact meaning or to conform their conduct under the law, thereby creating a chilling effect on the exercise of fundamental rights.

4

14. Currently, PC 4571 reads:

> "Every person who, having been previously convicted of a felony and confined in any State prison in this State, without the consent of the warden or other officer in charge of any State prison or prison road camp, or prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the State prison are located under the custody of prison officials, officers or employees, or any jail or any county road camp in this State, comes upon the grounds of any such institution, or lands belonging or adjacent thereto, is guilty of a felony."

15. On July 15, 2021, the Plaintiff, was attending a lawful protest near the California State Medical Facility ("CMF") in Vacaville, in Solano County.

16. While Plaintiff was lawfully attending this protest, California Department of Corrections and Rehabilitation ("CDCR") employees exited the outer gates of CMF in motor vehicles and on foot.

17. On information and belief, these CDCR employees were also California State Medical Facility employees.

18. On information and belief, some or all of these CDCR employees were members of CDCR's Investigative Services Unit ("ISU").

19. The CDCR employees confronted Plaintiff and other protesters on the sidewalk beyond the outer gates of the facility.

20. The sidewalk where CDCR employees confronted Plaintiff adjoins a street, California Drive, which is part of a suburban residential neighborhood. Suburban houses and a sidewalk line the opposite end of the street.

21. On information and belief, the sidewalk where Plaintiff was confronted is not owned by the defendants.

22. On information and belief, neither California Drive, the sidewalk on the other side of California Drive, nor the suburban residential neighborhood adjoining California Drive are owned by the defendants.

23. A CDCR employee photographed and videotaped Plaintiff while he was lawfully standing on the sidewalk. On information and belief, this employee was ISU Lieutenant J. Spaulding.

24. On information and belief, after the confrontation, Plaintiff and other protestors crossed the street and walked into the suburban residential neighborhood immediately adjoining CMF on the other side of the street.

25. On information and belief, CDCR, CMF, and ISU employees then followed Plaintiff and other protestors on public sidewalks and streets, videotaping and photographing Plaintiff and other protestors.

26. On information and belief, the CDCR, CMF, and ISU employees photographed and videotaped Plaintiff while standing on property that did not belong to the defendants.

27. On information and belief, the CDCR, CMF, and ISU employees photographed and videotaped Plaintiff knowing that they were standing on property that did not belong to the defendants.

28. On information and belief, the CDCR, CMF, and ISU employees were aware that at all times during the confrontation with Plaintiff and afterward, Plaintiff was outside of the outer fencing and the outer gate of the facility.

29. On information and belief, the CDCR, CMF, and ISU employees were aware that at all times during the confrontation with Plaintiff and afterward, Plaintiff was on property that did not belong to the defendants.

30. On information and belief, ISU employees later identified Plaintiff and investigated him, including but not limited to surveillance of his social media accounts, including Facebook, Twitter, and Instagram, as well as regular webpages.

31. On information and belief, ISU employees located a YouTube channel, "Kage Universal," operated by Plaintiff.

32. On information and belief, ISU employees classified Plaintiff's YouTube channel, along with other online publications and statements by Plaintiff, as being about "Black Supremacist Extremist Ideology" and Plaintiff as a "Black Supremacist Extremist" and "Black Identity Extremist".

33. On information and belief, ISU employees decided to prosecute Plaintiff based on his alleged posting of so-called "Black Supremacist Extremist" content and his being a "Black Supremacist Extremist" and/or "Black Identity Extremist."

34. On information and belief, CDCR and/or ISU have, and continue to, use the term "Black Identity Extremist" to classify individuals in their reports.

35. On information and belief, "Black Identity Extremist" is a term that has been used by organizations, including the FBI, to target individuals for prosecution based on protected First Amendment activity.

36. On information and belief, "Black Supremacist Extremist" is a term that has been used by organizations, including the FBI, to target individuals for prosecution based on protected First Amendment activity.

37. An intelligence assessment was published in August 2017 entitled "Black Identity Extremists Likely Motivated to Target Law Enforcement Officers" by the FBI. Without evidence, the intelligence assessment claims that Black people involved in unrelated police killings share an ideology called "Black Identity Extremis[m]".

38. On information and belief, this intelligence assessment was transmitted to CDCR and disseminated inside of ISU.

39. On information and belief, this intelligence assessment, along with other materials using the term "Black Identity Extremist" and "Black Supremacist Extremist," was read by the CDCR employees involved in the confrontation with Plaintiff on July 15, 2021.

40. On information and belief, CDCR and ISU employees classified Plaintiff's protected First Amendment activity as "Black Identity Extremism" or "Black Supremacist Extremism" and determined to prosecute him because of their classification of Plaintiff.

41. On information and belief, CDCR and ISU employees referred the matter to the Solano County District Attorney for prosecution based on Plaintiff's alleged "Black Identity Extremism" or "Black Supremacist Extremism."

42. On August 9, 2021, Plaintiff, who had previously been convicted of an unrelated felony, was arrested for violating PC 4571, after which he was taken into custody and incarcerated at the Solano County Justice Center Detention Facility at 500 Union Avenue in Fairfield, California ("Solano County Jail").

43. Plaintiff was accused of "[k]nowingly entering onto prison grounds" and charged with the felony of PC 4571.

44. However, all of the video or photographic evidence from CDCR staff indicated that Plaintiff was outside CMF, specifically on California Drive. (See Exhibit A.)

45. On August 11, 2021, Judge Pendergast of the Solano County Courthouse continued the matter to August 18, 2021, for readiness and preliminary.

46. On or about August 18, 2021, after Plaintiff had spent nine days incarcerated, the Solano County District Attorney's office dismissed the charges.

Count I – 42 USC 1983 – EXCESSIVE VAGUENESS IN VIOLATION OF DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

47. Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully stated herein.

48. The Fourteenth Amendment's Due Process Clause solemnly declares, "No state shall... deprive any person of life, liberty, or property, without due process of law." This cornerstone of justice establishes the fundamental notion that clarity in the law is non-negotiable. The U.S. Supreme Court, in *Grayned v. City of Rockford*, 408 U.S. 104 (1972), reinforced this crucial standard, stating that any enactment lacking in precise definition is, by nature, void for its vagueness. This principle is vital for ensuring fairness and upholding justice within our legal system.

49. Penal Code section 4571 poses a significant ambiguity. It imposes criminal liability when a person who was "previously convicted of a

1  felony and confined in any State prison… comes upon the grounds of" a
2  "State prison or prison road camp, or prison forestry camp, or other
3  prison camp or prison farm or any other place where prisoners of the
4  State prison are located under the custody of prison officials, officers or
5  employees, or any jail or any county road camp in this State…or lands
6  belonging or adjacent thereto." Cal. Pen. Code § 4571.

50. PC 4571 lacks clarity and precision, leaving individuals guessing about its meaning and application. It fails to define the conduct it seeks to regulate, resulting in inconsistent interpretations and arbitrary enforcement.

51. The wording "adjacent thereto" creates a murky interpretative web because, depending on the particular penal institution, it extends to disparate parcels of adjacent land without clearly defined limits. The nebulous nature of this provision poses profound challenges, as a violation of PC 4571 could occur if a person unknowingly strays too close to one of the penal institutions referenced in the statute.

52. For instance, a formerly incarcerated person innocently strolling through a residential neighborhood adjacent to a penal facility could be ensnared in a felony charge, unaware of their transgression. The California State Medical Facility, in fact, adjoins precisely such a residential neighborhood. As the police report in this prosecution shows, California Department of Corrections and Rehabilitation staff

11

exited the grounds of the California State Medical Facility, went onto residential streets and sidewalks on foot, and photographed Mr. Brown from those residential streets while Mr. Brown was present on those same streets. (See Exhibit A.) Therefore, this gray area within the law is rife with the potential for misunderstanding and unintended violation.

53. Similarly, Penal Code section 4571 springs into action if an individual with a prior conviction steps into any area housing prisoners or lands bordering it. The statute fails to explicitly define "any other place where prisoners of the State prison are located under the custody of prison officials, officers or employees." This lack of clarity in the provision's language creates a particularly frustrating ambiguity. It invites subjective interpretations, leading to inconsistent and potentially unjust enforcement. For example, the various Superior Courthouses in each of California's fifty-eight counties are all locations "where prisoners of the State prison are located[.]" Such vagueness undermines the principle of equal treatment under the law and can result in unpredictable legal outcomes.

54. These phrases that do not clearly define the statute's parameters fail to provide a person of ordinary intelligence with fair notice of what is prohibited.

55. Penal Code section 4571 carries significant implications as it authorizes a felony charge on individuals who inadvertently breach its provisions. The ambiguities surrounding the interpretation of "adjacent" and "any other place where prisoners of the State prison are located" amplify these risks considerably. A person making a sincere and logical conclusion that a certain area doesn't meet the criteria may still be ensnared in a felony charge. This lack of clarity is so standardless that it authorizes or encourages seriously discriminatory enforcement.

56. PC 4571 is therefore void for vagueness in violation of the Due Process Clause.

**COUNT II - 42 U.S.C. § 1983 - OVERBREADTH IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

57. Plaintiffs incorporate and reallege each of the foregoing paragraphs.

58. PC 4571 is overbroad because it is unclear what the statute proscribes in most of its intended applications.

59. Unlike vagueness, '[t]he First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges.' *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible

applications of the law are substantial when judged "relative to the statute's plainly legitimate sweep.' *United States v. Williams,* 553 U.S. 285, 292-293 (citing *Board of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 485). The facial overbreadth doctrine is restricted in its application, however, and is "not recognized . . . outside the limited context of the First Amendment." *United States v. Salerno,* 481 U.S. 739, 745 (1987).

60. PC 4571, as currently written, is overly broad in scope. It goes beyond regulating the targeted conduct, reaching into areas of constitutionally protected conduct.

61. "[I]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Houston v. Hill*, 482 U.S. 451, 458

62. PC 4571 violates the First Amendment doctrine regarding overbreadth, as it forbids a substantial amount of constitutionally protected speech and is not narrowly tailored to prohibit only constitutionally unprotected speech; as such, it is an unconstitutional abridgment of First Amendment freedoms. See, e.g., *City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987) and *Coates v. City of Cincinnati*, 402 U.S. 611 (1971).

63. Moreover, the ambiguity implicates fundamental free speech concerns under the First Amendment

**COUNT III - 42 U.S.C. § 1983 – FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

(Against John Does 1-10)

64. Plaintiffs incorporate and reallege each of the foregoing paragraphs.
65. Defendants inflicted injury on the plaintiff by subjecting him to false arrest, imprisonment, and unreasonable seizure.
66. The defendants arrested the plaintiff for violating California PC 4571 based upon his participation in a lawful protest outside the grounds owned by the Defendants. Defendants deprived the plaintiff of his freedom by subjecting him to unreasonable detention and by arresting him without a warrant and without reasonable or probable cause, all without his consent.

**COUNT IV – VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATE CONSTITUTION.**

(Against John Does 1-10)

67. Plaintiffs incorporate and reallege each of the foregoing paragraphs.
68. Defendants unlawfully retaliated against the plaintiff for exercising his First Amendment right to speak. Defendants unreasonably arrested him, wrongfully charged him with PC 4571, and caused him

      to be jailed to retaliate against him for engaging in constitutionally protected speech.

69. Under the First Amendment, the plaintiff had a right to attend the protest. Defendants unreasonably arrested him, wrongfully charged him with PC 4571, and caused him to be jailed to retaliate and retaliate against him for exercising his right to free speech.

**REQUEST FOR RELIEF**

Wherefore, plaintiffs respectfully request that this court:

a) declare PC4571 to be unconstitutional on grounds of vagueness and overbreadth;

b) declare that Defendants used PC 4571 to retaliate against Plaintiff and , in doing so, violated his First and Fourteenth Amendment rights;

c) permanently enjoin the enforcement of PC 4571;

d) award plaintiff's costs and reasonable attorney's fees in this action; and

e) grant such other and further relief as this court may deem just and proper.

DATED: August 9, 2023

                                        Respectfully Submitted,

                                        s/ Kellie Walters
Legal Services for Prisoners with Children
4400 Market Street
Oakland, CA 94608
(415) 625-7043
kellie@prisonerswithchildren.org