UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN, AKA MINISTER KING X, & ALL OF US OR NONE,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et. al.,<br><br>Defendants. | No. 2:24-cv-01281-DJC-CSK<br><br><br>ORDER |

Pending before the Court is a Motion to Dismiss (Mot. to Dismiss ("Mot") (ECF No. 67)), Plaintiff William Brown, AKA Minister King X ("King") and Plaintiff All of Us or None's ("AOUON") First Amended Complaint (First Am. Compl. ("FAC") (ECF No. 61)), against Defendants State of California, California Department of Corrections and Rehabilitation, Governor Gavin Newsom, Secretary Jeff Macomber, and John Does 1–10.  Plaintiffs primarily challenge California Penal Code Section 4571, which prohibits anyone who has been previously convicted of a felony to be present on the grounds adjacent to any State prison without the prior permission of the Warden or other prison officials.  Plaintiffs argue that section 4571 is unconstitutionally vague, overbroad, and is an unreasonable restriction on speech in violation of the First and Fourteenth Amendments.  Plaintiffs also challenge King's arrest under that statute.

For the reasons discussed below, the Court concludes that neither King nor AOUON have alleged sufficient facts to confer Article III standing. Additionally, the Court concludes that Defendants State of California, CDCR, Governor Newsom and Secretary Macomber should be dismissed under the Eleventh Amendment. Thus, the Court grants Defendant's Motion to Dismiss with leave to amend.

## I.  Factual Background

King and AOUON bring suit against the State of California, CDCR, Governor Gavin Newsom, Secretary Jeff Macomber, and John Does 1-10 following King's arrest in Oakland, California on August 9, 2021. (FAC ¶ 61.) King was arrested and charged with violating Penal Code Section 4571.[1] (*Id.* ¶ 64.) Plaintiffs allege that the code section is rarely employed and that CDCR employees typically exercise their discretion not to refer similarly situated individuals for prosecution. (*Id.*) However, they claim that individuals labeled as "Black identity extremists" are retaliated against "at a rate higher than that of individuals who are not so labelled." (*Id.* ¶ 68.)

King serves as a representative for formerly and currently incarcerated individuals and is a Program Director at California Prison Focus, a civil rights organization based in Oakland, California. (*Id.* ¶ 10.) King also operates the YouTube channel "Kage Universal." (*Id.* ¶ 41.) AOUON is a group of formerly and currently incarcerated individuals whose mission includes "fight[ing] against the discrimination that people face every day because of arrest or conviction history." (*Id.* ¶ 14.) Members of AOUON have attended protests and demonstrations in the vicinity of California prisons and jails as part of their advocacy efforts. (*Id.* ¶ 11.)

The following allegations, many of which are made "on information and belief," are taken from the First Amended Complaint. In July 2021, King, and members of

---

[1] Penal Code section 4571 states: "every person who, having previously been convicted of a felony and confined in any State prison in this State, without the consent of the warden or other officer in charge of any State prison or prison road camp, or prison forestry camp, or other prison camp or prison farm or any place where prisoners of the State prison are located under the custody of prison officials, officers or employees, or any jail or any county road camp in this State, comes upon the grounds of any such institution, or lands belonging or adjacent thereto, is guilty of a felony." (*Id.* ¶ 23.)

AOUON attended a protest on the public sidewalk near the California State Medical Facility in Vacaville, California.  (*Id.* ¶ 24.)  During the protest, CDCR employees exited the outer gates of the facility and confronted the group.  (*Id.* ¶ 30.)  The employees began taking photographs and videos of the protestors and followed them into a nearby neighborhood.  (*Id.* ¶ 36.)

According to Plaintiffs, some of the CDCR employees at the protest were also part of the CDCR's Investigative Services Unit ("CDCR-ISU") and had surveilled King's social media accounts prior to the protest.  (*Id*. ¶ 39.)  CDCR-ISU employees classified King's YouTube channel as promoting a "Black supremacist extremist ideology" and labeled King as a "Black supremacist extremist" and "Black identity extremist." (*Id.*  ¶ 42.)  The classification comes from an FBI intelligence assessment that was disseminated to CDCR-ISU employees and used to target individuals for prosecution based on protected First Amendment activity.  (*Id.* ¶ 45.)  Plaintiffs allege that a written or unwritten policy exists within CDCR-ISU to target individuals labeled as "Black identity extremists" or "Black supremacist extremists" for retaliation at a higher rate than that of those who are not so labeled.  (*Id*. ¶ 68.)

The next day, King's parole officer was contacted by CDCR staff and told to investigate King and his involvement in the recent protest.  (*Id.* ¶ 52.)  Plaintiffs allege that that King was specifically targeted because he was classified as a "Black identity extremist."  (*Id.* ¶ 57.)  From this day until King's arrest on August 9, 2021, Plaintiffs allege that CDCR continued to surveil King's social media posts.  (*Id.* ¶ 55.)

Following his arrest, King was taken to the Solano County Justice Center Detention Facility where he was incarcerated for nine days, at which point the charges against him were dropped.  (*Id.* ¶¶ 63, 70.)  King was represented by two members of the Legal Services for Prisoners with Children ("LSPC") team, who expended work time on his case.  (*Id*. ¶ 72.)  LSPC is the sister organization of AOUON.  As a result of King's arrest and prosecution, Plaintiffs have reduced the extent of their participation in protests out of fear of prosecution for violating section 4571.  (*Id*. ¶ 74.)  Specifically,

AOUON members are fearful of demonstrating in "traditional public forums in the vicinity of the type of facilities listed" in the code section. (*Id.*)

Defendants now argue that Plaintiff's suit should be dismissed for lack of jurisdiction and failure to state a claim on the merits. Plaintiffs oppose the motion. (Opp. (ECF No. 72)). On October 3, 2024, the Parties appeared in Court for oral argument. The Court took the matter under submission.

## II. Legal Standard

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

A party may move to dismiss a complaint for "lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). Challenges to a plaintiff's Article III standing are properly raised under a 12(b)(1) motion as standing is required for a federal court to exercise jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1078 (N.D. Cal. 2015). Challenges regarding sovereign immunity can also be brought through a 12(b)(1) motion. *Sato v. Orange Cnty. Dep't of Ed.,* 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a 12(b)(1) or 12(b)(6) motion."). Under 12(b)(1), a party may raise a facial or factual challenge. *See Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014). In a facial challenge, taking the allegations in the complaint as true, "the court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself." *Nat'l Fed'n of the Blind*, 103 F. Supp. 3d at 1078. "[The] party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996); *Chandler*, 598 F.3d at 1122.[2]

---

[2] Defendants also move to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). However, the Court ultimately resolves this matter on standing and Eleventh Amendment grounds and does not reach the merits. Therefore, the instant Motion is appropriately resolved under 12(b)(1).

4

### III. Discussion

#### A. Plaintiffs Have Not Pled Article III Standing

Article III requires plaintiffs bringing suit to present a justiciable "case or controversy." *Benton v. Md.,* 395 U.S. 784, 788 (1969) (internal citations omitted). To meet the requirements of Article III, plaintiffs must demonstrate standing by showing they suffered an "injury in fact" that is fairly traceable to the actions of the defendants and that the injury will be "redressed by a favorable decision." *See Lujan v. Defens. of Wildlife,* 504 U.S. 555, 560–61 (1992) (internal citations omitted). To show an injury in fact, the alleged injury must be (1) "concrete" and "not abstract" (2) particularized, meaning that it affects the plaintiff individually, rather than in a generalized manner and (3) is either real or imminent such that it has occurred or will likely occur soon. *Ariz. All. for Retired Ams. v. Mayes,* 117 F.4th 1165, 1173 (9th Cir. 2024) (citing *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024)). Where a plaintiff seeks prospective relief, the injury in fact must also be imminent. *See Lujan,* 504 U.S. at 564. To satisfy causation, plaintiffs must show a sufficiently close and predictable link between the challenged action and their injury in fact. *Ariz. All.,* 117 F.4th at 1173 (citing *Hippocratic Medicine*, 602 U.S. at 383). To show redressability, plaintiffs must show that a favorable ruling will cure their injury. *Id.* at 1174 (citing *California v. Texas,* 593 U.S. 659, 671 (2021)).

#### 1. First and Fourteenth Amendment Claims

Plaintiffs bring four claims based on the First and Fourteenth Amendments: Counts One, Two, Three, and Five. (*See generally* FAC.) Plaintiffs argue they have standing because their speech has been chilled by enforcement of section 4571 against King. (*See* Opp. at 7.) Defendants claim that AOUON has not alleged organizational or associational standing, that this case does not involve the First Amendment, and that Plaintiffs cannot seek prospective relief based on the injuries alleged. (Mot. at 6–7.)

////

### i. AOUON Has Not Alleged an Injury in Fact

AOUON has not properly alleged an injury in fact such that it can bring the claims asserted in this suit. First, AOUON has failed to allege associational standing because they have not provided any connection between their organization and the alleged policy that exists within CDCR. Second, AOUON has failed to allege a theory of organizational standing based on frustration of purpose, diversion of resources, and pre-enforcement injury. The Court discusses each of these arguments in turn.

#### a. AOUON Lacks Associational Standing

To state associational standing, Plaintiffs must show that (1) its members would otherwise have standing to sue in their own right; (2) that the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Advert. Com'n,* 432 U.S. 333, 342 (1977).

Here, the Court finds that Plaintiffs have not made it clear that any individual in their membership would be able to sue. During argument, Plaintiffs expressed concern about specifically naming individuals from their membership who have been labeled as "Black identity extremists." *See NAACP v. State of Ala. ex. rel. Patterson,* 357 U.S. 449, 458–59 (1958). However, Plaintiffs need not go that far. The issue currently is that AOUON makes no allegations that the label has ever been associated with their organization or with any members of the organization such that their membership would be at risk of discriminatory enforcement of section 4571. Nor do the allegations state that King is a member of AOUON. Therefore, the Court finds that Plaintiffs have not alleged associational standing.

#### b. AOUON Lacks Organizational Standing

To state organizational standing, an organization must allege "(1) that it has been or will imminently be injured, (2) that the injury was caused or will be caused by the defendant's conduct, and (3) that the injury is redressable." *Ariz. All.,* 117 F.4th at 1172 (citing *Hippocratic Medicine*, 602 U.S. at 395–96). In reliance on the Supreme

Court's decision in *Hippocratic Medicine*, the Ninth Circuit recently overturned its previous caselaw that conferred standing on organizations for merely alleging that a challenged policy (1) frustrated an organization's mission and (2) required it to spend money or divert resources in response. *Ariz. All.,* 117 F.4th at 1174–76.

To show injury in fact, an organization must show that the challenged policy directly affects the organization's "core" business activities rather than just its "abstract social mission." *Id.* at 1177 (internal citations omitted). "General legal, moral, ideological and policy concerns do not suffice on their own to confer Article III standing to sue in federal court." *Hippocratic Medicine,* 602 U.S. at 386. Here, AOUON describes that its mission is to "fight against the discrimination that people face every day because of arrest or conviction history." (FAC ¶ 14.) Plaintiffs argue that by targeting people with felonies, enforcement of Penal Code section 4571 directly impacts individuals who comprise AOUON's membership, thereby impairing their organizational mission. However, the fact that a law would apply to individuals within a group does not constitute direct harm to a "core business activity."

In *Havens Realty v. Coleman*, the Supreme Court held that harm to a "core business activity" existed where plaintiff organization's housing counseling service was directly impacted by defendant landlord's racial steering practices. *See* 455 U.S. 363, 368 (1982). Importantly, had the organization's injury been based solely on its "public advocacy" or "public education" functions, it would not have been granted standing. *Ariz. All.,* 117 F.4th at 1177 (citing *Hippocratic Medicine*, 602 U.S. at 394). Here, Plaintiffs' current allegations are more akin to a harm to their public advocacy functions rather than a core business activity.

Additionally, Plaintiffs' claim that LSPC spent resources defending King following his arrest is not sufficient for standing. First, it is unclear that AOUON suffered any harm because the work time came from its sister organization rather than from AOUON itself. Second, even if the work time diversion could be attributed to AOUON, it is unclear to the Court that this is argument is anything more than

an organization "manufactur[ing] its own standing" by exerting resources in response to a government policy rather than showing any direct harm to its core business activities.  *See Hippocratic Medicine,* 602 U.S. at 394.  Even under the prior "diversion of resources" analysis, the costs of litigation were generally insufficient to constitute an injury.  *See Smith v. Pac. Prop. and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001)).  Therefore, AOUON lacks organizational standing based on the allegations in the First Amended Complaint.  *See Hippocratic Medicine,* 602 U.S. at 395.

### c. AOUON Lacks a Pre-Enforcement Injury

While AOUON lacks standing under traditional Article III principles, where a plaintiff alleges a First Amendment injury, the inquiry "tilts dramatically toward a finding of standing."  *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1155 (9th Cir. 2000).  A party may have pre-enforcement standing if they allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Susan B. Anthony v. Driehaus,* 573 U.S. 149, 159 (2014).  However, in stating a First Amendment claim, plaintiffs cannot "nakedly assert [] that his or her speech was chilled. . . ."  *Twitter, Inc. v. Paxton,* 56 F.4th 1170, 1174 (9th Cir. 2022) (citing *Cal. Pro-Life Council, Inc.  v. Getman*, 328 F.3d 1088, 1095) (9th Cir. 2003)).  Rather, plaintiffs must show that their expressive activity is chilled because of a "realistic danger" of prosecution.  *Ariz. All.* 117 F.4th at 1181 (quoting *Libertarian Party of L.A. Cnty. v. Bowen,* 709 F.3d 867, 870 (9th Cir. 2013).

A plaintiff has pre-enforcement standing if they have "alleged a sufficiently imminent injury for the purposes of Article III."  *Driehaus,* 573 U.S. at 152.  The Ninth Circuit uses a three-part inquiry for pre-enforcement injuries that analyzes (1) whether the plaintiff has a "concrete plan" to violate the law (2) whether the enforcement authorities have communicated a specific warning or threat to initiate proceedings

and (3) whether there is a "history of past prosecution or enforcement."[3] *Alaska Right to Life Pol. Action Comm. v. Feldman,* 504 F.3d 840, 849 (9th Cir. 2007) (quoting *Getman*, 328 F.3d at 1094). In 2014, the Supreme Court outlined the following requirements for a pre-enforcement injury: (1) a plaintiff must allege an "intention to engage in a course of conduct arguably affected with a constitutional interest," (2) the intended future conduct must be "arguably. . .proscribed by [the challenged] statute," and (3) there must be a credible threat of enforcement." *Driehaus,* 573 U.S. at 159 (citing *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979)). The Ninth Circuit rejected the claim that *Driehaus* "abrogated" the prior three-part inquiry, *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 n.9 (9th Cir. 2022), and has since "toggled between" these frameworks when analyzing pre-enforcement injuries, *Peace Ranch, LLC v. Bonta,* 93 F.4th 482, 487 (9th Cir. 2024).

In *Arizona Alliance for Retired Americans v. Mayes,* the Ninth Circuit analyzed whether a "realistic danger" of enforcement existed in the First Amendment context using its three-part test, albeit incorporating *Driehaus* within its reasoning. *See Ariz. All.,* 117 F.4th at 1181–82. In light of *Arizona Alliance*, this Order will use a similar analysis in assessing Plaintiffs' First Amendment pre-enforcement claims. However, for the reasons below, AOUON fails to state a pre-enforcement injury under either formulation of factors, which largely cover the same considerations. Particularly, the facts alleged do not plausibly suggest a "*genuine* threat of *imminent* prosecution." *Unified Data,* 39 F.4th at 1210 (citations omitted) (emphasis included).

To show a concrete plan, AOUON must allege the specific conduct in which they intend to engage. *See Driehaus,* 573 U.S. at 161. The Ninth Circuit has generally held that this is satisfied where the "plaintiff's intended speech *arguably* falls within the statute's reach." *Ariz. All.,* 117 F.4th at 1182 (emphasis included). Ninth Circuit

---

[3] The factor regarding history of enforcement carries little weight when the challenged law is relatively new, and the record contains little information as to enforcement. *Tingley v. Ferguson,* 47 F.4th 1055, 1069 (9th Cir. 2022).

precedent also states that allegations must include information about the "when, to whom, where or under what circumstances." *Seattle Pac. Univ. v. Ferguson,* 104 F.4th 50, 59 (referencing *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010)). Here, AOUON states that they intend to continue participating in their protests and demonstrations in the future. However, the current pleadings do not indicate a plan to protest in the areas prohibited by section 4571. Plaintiffs allege that AOUON intends to protest outside the State Capitol, but do not explain how that would put their members at risk of violating the code section. This is not to say that AOUON cannot meet this prong. Rather, the allegations, as currently pled, do not indicate more than a "hypothetical intent" to violate the law.

Under the second prong, a specific threat or warning of prosecution is relevant but not necessary to establish standing. *See Ariz. All.*, 117 F.4th at 1182. In *Tingley v. Ferguson*, although the plaintiff did not present a specific threat of enforcement, the Ninth Circuit determined that a "combination of other circumstances amounted to a credible threat of enforcement." *Isaacson v. Mayes,* 84 F.4th 1089, 1100 (9th Cir. 2023) (discussing *Tingley,* 47 F.4th at 1068). Here, Plaintiffs allege a chilling effect but provide no allegations about "other circumstances" that would indicate they are susceptible to enforcement. *See Isaacson,* 84 F.4th at 1100–01 (stating that the combination of threats from county attorneys, Arizona health agencies and private parties was sufficient to allege imminent future injury); *Tingley*, 47 F.4th at 1068 (finding that Washington's general warning of enforcement coupled with plaintiff's self-censorship in the face of the law satisfied the second prong). In light of Plaintiff's allegations that section 4571 is "rarely employed" (FAC ¶¶ 65, 66) the Court cannot determine if this prong is met.

Lastly, Plaintiffs have not demonstrated a history of enforcement that would indicate that the harm to AOUON is more than merely speculative. The allegations discuss King's arrest and prosecution but make no mention of any others that have taken place since the law's inception. The case here is unlike *Arizona Alliance*, where

the Ninth Circuit found that Plaintiff's inability to show a history of enforcement did not undermine standing because the challenged law was enjoined the day after it took effect. *Ariz. All.*, 117 F.4th at 1182. Rather, section 4571 is alleged to have existed since 1941. Thus, the "sparse" allegations of enforcement "weigh against standing." *Tingley*, 47 F.4th at 1069.

For the above reasons, the Court finds that AOUON has not stated a pre-enforcement injury.

### ii. King Has Not Alleged an Injury in Fact

Although a closer call, the Court finds that King has not established standing to bring First Amendment claims. Plaintiffs allege a chilling effect on King's speech and participation in protests and demonstrations following his arrest. (FAC ¶ 74 alleging that King has reduced the extent of his participation in demonstrations and protests due to a fear of being prosecuted for a violation of section 4571, including by abstaining from participating in protests, participating in a less visible role, and altering the content of his speech and signs.)

In reaching this conclusion, the Court applies the same threat of enforcement factors described above. *See Porter v. Martinez*, 68 F.4th 429, 437 (9th Cir. 2023). In considering the concrete plan factor, courts have relaxed the details required for stating a concrete plan where a plaintiff has previously violated the law in question. *See Tingley,* 47 F.4th at 1068 ("[W]e do not require plaintiffs to specify, 'when, whom, where, or under what circumstances' they plan to violate the law when they have already violated the law in the past."). Unlike other cases in which the Ninth Circuit has relaxed the concrete plan factor, however, the pleadings do not sufficiently indicate that King seeks to protest adjacent to facilities listed in Penal Code section 4571 in the future. *See Porter,* 68 F.4th at 437 (finding that plaintiff stating she wanted to specifically engage in the prohibited activity in the future but wouldn't out of fear of enforcement contributed to finding that concrete plan existed); *Tingley* 47 F.4th at 1067 (finding a concrete plan where there were specific allegations of past work and

expectations for future work that would violate the challenged law). Even the allegation regarding the upcoming protest outside the State Capitol (which again, would not violate section 4571) refers only to AOUON, and not King. (FAC ¶ 12.)

As to the remaining factors, the second prong leans in King's favor, as he was previously arrested and prosecuted under the code section he now challenges. *See Porter*, 68 F.4th at 437. However, as discussed above, the history of enforcement as alleged is "sparse" which "weighs against standing." *Tingley*, 47 F.4th at 1069. Considering the factors together, the Court finds that King has not stated an injury sufficient for Article III standing.

### 2. Fourth Amendment Claims

Plaintiffs also bring one claim based on an alleged violation of the Fourth Amendment. Plaintiffs seek prospective relief on the grounds that King was falsely arrested for violating section 4571 because of his participation in a lawful demonstration. Defendants argue that prospective relief is improper because the likelihood that the harm will reoccur is speculative and unsubstantial. (Mot. at 8–9.)

A plaintiff has standing to seek prospective injunctive and declaratory relief when she faces an ongoing injury or real and immediate threat of future injury. *See City of L.A. v. Lyons,* 461 U.S. 95, 107 n.8 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy. . . if unaccompanied by any continuing, present effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Instead, the plaintiff must show that [he is] realistically threatened by a repetition of the violation at issue. *Id*. at 496.

AOUON lacks standing to bring this claim under organizational and associational theories for the reasons discussed above. The harms alleged by AOUON are largely speculative, as there are no allegations that anyone in their membership has ever been arrested or targeted for arrest under section 4571. Additionally, King does not have standing to seek prospective relief here because the only harm he has alleged is a single arrest back in 2021. (FAC ¶ 57.) Furthermore,

from the time of King's arrest until the filing of the Complaint, no other allegations of unconstitutional acts by CDCR employees were mentioned.  A single arrest, without more, is not sufficient to suggest a likelihood of repeated harm.  *See Lyons*, 461 U.S. at 107–110 (discussing how a previous constitutional violation that occurred five months prior to the filing of the complaint does not alone indicate that there is a likelihood of future harm).  Therefore, neither Plaintiff has standing to bring the Fourth Amendment claim.

### B. Named Defendants Have Eleventh Amendment Immunity

Under the Eleventh Amendment and broader notions of sovereign immunity, states and state officials are barred from suit in many instances.  *See Brooks v. Sulphur Springs Valley Elec. Coop.,* 951 F.2d 1050, 1053 (9th Cir. 1991).  An exception to this principle is the *Ex parte Young* doctrine, which allows suits for prospective relief against state officials, acting in their official capacity if the official has "some connection" to the alleged injury.  *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (internal citations omitted).  The connection must extend beyond a "supervisory" role and should be "fairly direct."  *Snoek v. Brussa,* 153 F.3d 984, 986 (9th Cir. 1998) (internal citations omitted).

During the Motion to Dismiss hearing, the Court dismissed the State of California, CDCR and Governor Newsom from this suit with prejudice finding that Plaintiffs would not be able to allege facts that would overcome the bar from suit.  The Court also dismissed Secretary Macomber with leave to amend, finding that Plaintiffs had not yet alleged a sufficient connection between the enforcement and their injury. Since neither Plaintiff has established standing, and all the named Defendants are dismissed from the suit on Eleventh Amendment grounds, the Court need not reach the merits of the claims presented.

////

////

////

**IV.     Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss the State of California, CDCR and Governor Gavin Newsom is GRANTED without leave to amend. Secretary Jeff Macomber is also dismissed with leave to amend. Defendants' Motion to Dismiss the case for lack of standing is GRANTED, also with leave to amend. Plaintiff shall file a second amended complaint within twenty-one (21) days of this order.

IT IS SO ORDERED.

Dated:  **January 10, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE