UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BROWN, et al.,<br>Plaintiffs,<br>v.<br>JEFF MACOMBER, et al.,<br>Defendants. | No. 2:24-cv-01281-DJC-CSK<br><br>ORDER |

Pending before the Court are Defendant Christina Corpus's Motion to Dismiss, and Defendants Jeff Macomber, Fernando Mata, Judith Spaulding, Robert Kaihe, Tyler Padovan, Sircoya Williams and Ron Broomfield's Motion to Dismiss Plaintiffs William Brown, aka Minister King X, and All of Us or None's Second Amended Complaint. Both Motions are brought under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and allege that Plaintiffs lack standing to bring suit and fail to state claims upon which relief can be granted. Previously, this Court granted Defendants' motion to dismiss on Eleventh Amendment and standing grounds. For the reasons discussed below, the Court GRANTS Defendant Corpus's Motion and GRANTS IN PART and DENIES IN PART CDCR Defendants' Motion.

////

## BACKGROUND

### I. Factual Background

#### A. California Penal Code § 4571

At the heart of this matter is California Penal Code § 4571, which was enacted in 1941. This section reads:

> Every person who, having been previously convicted of a felony and confined in any State prison in this State, without the consent of the warden or other officer in charge of any State prison or prison road camp, or prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the State prison are located under the custody of prison officials, officers or employees, or any jail or any county road camp in this State, comes upon the grounds of any such institution, or lands belonging or adjacent thereto, is guilty of a felony.

(SAC (ECF No. 88) ¶ 65); Cal. Pen. Code § 4571. Plaintiffs allege that since January 1, 1994, CDCR has incarcerated 238 individuals for violating section 4571. (SAC ¶ 66.)

#### B. Parties

Plaintiff William Brown, aka Minister King X, ("Plaintiff King") regularly attends demonstrations and advocates for the rights of currently and formerly incarcerated individuals. (*Id.* ¶ 7.) He "amplifies the voices of prisoners by peacefully protesting the California Department of Corrections and Rehabilitation's ("CDCR") arbitrary actions against them." (*Id.* ¶ 9.) Plaintiff King regularly holds and attends demonstrations advocating for the rights of currently and formerly incarcerated individuals. (*Id.* ¶ 12.) He alleges that section 4571 has, and continues to, restrict his engagement in advocacy and organizing efforts. (*Id.* ¶ 13.)

Plaintiff All of Us or None ("AOUON") is a group of currently and formerly incarcerated individuals who advocate for incarcerated and formerly incarcerated individuals and their families. (*Id.* ¶¶ 14, 15.) Their work involves organizing community actions, raising awareness about systemic injustices, and lobbying for policy changes. (*Id.* ¶ 15.) "As an essential component of that work" AOUON

members "routinely organize and attend demonstrations near [CDCR] institutions, jails, and courthouses." (*Id.*) Plaintiff King is alleged to be a member of AOUON, from August 9, 2021, until present day. (*Id.* ¶ 17.) At least one member of AOUON has been convicted and incarcerated for violating section 4571.[1] (*Id.* ¶ 18.)

The SAC also includes allegations about the experiences related to three AOUON members who were all formerly incarcerated in California state prisons. (*See id.* ¶¶ 27, 28, 29.) John Roe 1 has avoided visiting incarcerated friends in California due to fear of harassment or threat of arrest if he goes near carceral facilities. (*Id.* ¶ 27.) Jane Roe 2 has avoided visiting incarcerated family and friends due to fear of going near carceral facilities. (*Id.* ¶28.) John Roe 3 volunteered with a non-profit group to conduct workshops in 2018 at a CDCR-operated "conservation camp" and submitted clearance paperwork to prison officials. (*Id.* ¶ 29.) During the workshop, it was discovered that the clearance had not been approved, but custodial staff allowed the workshop to finish. (*Id.*) John Roe 3 is still "uncertain as to whether the guard's foregoing enforcement of the required clearance sufficed to render his presence legal or whether he violated [ ] section 4571." (*Id.*)

**C. Facts**

The Court has detailed the allegations discussing the July 2021 protest ("July Protest") at the California Medical Facility ("CMF") and the subsequent investigation into Plaintiff King. (Jan. Order (ECF No. 79) at 2–4.) The SAC now elaborates on protests and demonstrations that occurred after the incidents outlined in the prior Order.[2]

First, the SAC alleges that prior to the July Protest and prosecution, Plaintiff King, and AOUON organized a demonstration outside of San Quentin State Prison scheduled for August 21, 2021 ("August Demonstration"). (SAC ¶ 121.) This

---

[1] It is unclear if this is a reference to Plaintiff King or some other member of AOUON.

[2] The Court notes that some of the "future" events alleged in the SAC have since come to pass.

demonstration was part of "Black August" which occurs in August to "commemorate[ ] the lives of Black freedom fighters, many of whom were killed by the state or imprisoned for defending Black lives." (*See id.* ¶¶ 123–126.) Upon his release from Solano County Jail August 18, 2021, Plaintiff King was told by his parole agent that he would not be prosecuted for any parole violations, but that he should not violate the law by being in the vicinity of any prisons or jails. (*Id.* ¶¶ 127, 128.) Plaintiff King understood this instruction to mean that he risked re-prosecution under section 4571 if he appeared in the vicinity of a prison or jails, including at the upcoming August Demonstration. (*Id.* ¶¶ 134, 135.) As a result, Plaintiff King and other AOUON members avoided the August Demonstration out of risk of arrest and prosecution under section 4571. (*Id.* ¶¶ 136, 137, 138.) Instead, these individuals attended a protest arranged away from the vicinity of San Quentin to avoid liability under section 4571. (*Id.* ¶ 149.) Plaintiffs allege that CDCR staff are aware of "Black August" and target individuals, organizations and demonstrations for retaliation for discipline and retaliation during this time. (*Id.* ¶¶ 129, 130.) Plaintiffs intend to continue demonstrating during "Black August" indefinitely and the risk of prosecution causes Plaintiffs to alter their plans to demonstrate, choose alternate locations for demonstrations, make additional precautions for demonstrations, or refrain from attending demonstrations entirely out of fear of prosecution. (*Id.* ¶ 150.)

Additionally, Plaintiff AOUON members intended to attend the "Quest for Democracy" rally in Sacramento, California in May 2025 but allege that the march route was restricted to streets considered not "adjacent" to the Sacramento County Jail. (*Id.* ¶ 23.) Further, AOUON members would need to take extra precautions when traveling to and from the rally to ensure they do not enter areas considered "adjacent" lands to the jail. (*Id.* ¶ 24.)

Further, Plaintiff AOUON's membership has participated in voting rights education and registration efforts for eligible voters in California jails, including in San Mateo County. (*Id.* ¶ 25.) In March 2024, members of Plaintiff AOUON created a

short documentary film shot outside of the Macguire Correctional Facility in San Mateo County. (*Id.*) Since at least one AOUON member had been formerly incarcerated in a state prison, he and the film crew were constrained to a distance from the jail so that he would not violate section 4571. (*Id.*) This resulted in "less favorable footage produced, and by the filmmaker's production process, added to the film's production time and cost." (*Id.*) Plaintiff AOUON further argues that section 4571 will burden operating informational tables or leafletting in the vicinity of the jail for events like the March 2025 County Special Election and the November 2026 general election. (*Id.* ¶ 26.)

## II. Procedural Background

Previously, this Court granted Defendants' motion to dismiss due to Plaintiffs' failure to allege standing and dismissed Governor Gavin Newsom, the State of California, and the CDCR without leave to amend. (*See generally* Jan. Order.) Plaintiffs have since filed a Second Amended Complaint against Defendants Jeff Macomber, Ron Broomfield, Sircoya M. Williams, Judith Spaulding, Robert G. Kaihe, Tyler A. Padovan, Fernando Mata – all employees of CDCR ("CDCR Defendants") – and Defendant Christina Corpus – the Sheriff of San Mateo County. (*See generally* SAC.) The SAC brings eight causes of action for: excessive vagueness in violation of the Fourteenth Amendment, overbreadth under the First Amendment, as applied challenges to the First Amendment, retaliation in violation of the First Amendment, false arrest in violation of the Fourth Amendment, unreasonable seizure in violation of the Fourth Amendment, supervisory liability, and conspiracy to violate civil rights.[3] Plaintiffs bring the first three causes of action against all Defendants and the remaining five against a variation of the CDCR Defendants. Plaintiffs seek declaratory

---

[3] Plaintiffs dismiss the Seventh Cause of Action for Supervisory Liability against Defendants Macomber, Broomfield, Williams and Spaulding and dismiss any individual capacity claims against Defendants Macomber, Broomfield, Williams, Spaulding and Corpus. (CDCR Opp'n at 24.) Plaintiff King also concedes that he lacks standing to bring the First Cause of Action for vagueness and the Third Cause of Action for violations of the First Amendment against Defendant Corpus. (Corpus Opp'n at 4.) Accordingly, the Court does not discuss those issues.

and injunctive relief. The CDCR Defendants and Defendant Corpus both move to dismiss Plaintiff's Second Amended Complaint. (Corpus MTD (ECF No. 101); CDCR MTD (ECF No. 102).) Both Motions argue that Plaintiffs have failed to sufficiently allege standing and failed to state claims upon which relief can be granted. Defendant Corpus's Motion further argues that Plaintiffs have failed to sufficiently plead causation under section 1983. The matter is fully briefed. (Corpus Opp'n (ECF No. 106); CDCR Opp'n (ECF No. 105); Corpus Reply (ECF No. 107); CDCR Reply (ECF No. 108).) The Court held oral argument and was taken under submission (ECF No. 109.)

## MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### I. Legal Standard

A party may move to dismiss a complaint for "lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). Challenges to a plaintiff's Article III standing are properly raised under a 12(b)(1) motion as standing is required for a federal court to exercise jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1078 (N.D. Cal. 2015). Under 12(b)(1), a party may raise a facial or factual challenge. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In a facial challenge, taking the allegations in the complaint as true, "the court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself." *Nat'l Fed'n of the Blind*, 103 F. Supp. 3d at 1078. "[The] party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996); *Chandler*, 598 F.3d at 1122.

////

////

////

////

## II. Discussion

Defendants both argue that Plaintiffs lack standing, and thus the SAC must be dismissed. Plaintiffs, who seek injunctive and declaratory relief, contend that they have sufficiently met the requirements for standing.

"[T]he irreducible constitutional minimum of standing consists of three elements." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 559–60 (1992) (internal quotations omitted)). The plaintiff must have suffered (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan,* 504 U.S. at 560–61). In a claim for prospective relief, the plaintiff must demonstrate an immediate risk absent an injunction. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02 (1983). "As in all standing inquiries, the critical question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Gonzalez v. United States Immigr. & Customs Enf't.,* 975 F.3d 788, 803 (9th Cir. 2020) (internal quotation marks and emphasis omitted).

### A. Plaintiff King

#### 1. CDCR Defendants

Plaintiff King brings seven causes of action premised on his arrest at the July 2021 Protest and the subsequent chilling effect on his protest activity. He seeks both injunctive and declaratory relief. The CDCR Defendants argue that Plaintiff King does not have standing to seek prospective injunctive relief because he has not alleged a "concrete plan" to violate the law and there is no "realistic danger" of enforcement.

Given the "unique standing considerations" that exist in First Amendment challenges, the Supreme Court and Ninth Circuit allow plaintiffs to "establish an injury in fact without first suffering a direct injury from the challenged restriction." *Lopez v. Candaele,* 630 F.3d 775, 785 (9th Cir. 2010). In these pre-enforcement challenges, the plaintiff "may meet constitutional standing requirements by demonstrating a

realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Id.* To show a "realistic danger" a plaintiff must allege [ ] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . .a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979). The Ninth Circuit has focused this inquiry on "(1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Flaxman v. Ferguson,* 151 F.4th 1178, 1185 (9th Cir. 2025).

Defendants argue that Plaintiffs have failed to allege a pre-enforcement injury because there is no "concrete plan" to violate the law and there is no "realistic danger" of enforcement because any such danger is speculative. Instead, Defendants argue that Plaintiffs "could avoid violating the law – and therefore face no risk of enforcement" by obtaining permission from the warden prior to attending the protest. To support their argument, Defendants cite to the Supreme Court's decision in *Murthy v. Missouri,* 603 U.S. 43 (2024).

Turning first to *Murthy,* in that case the plaintiffs – two States and five social-media users – sued Executive Branch officials and agencies alleging that they pressured the platforms to suppress protected speech in violation of the First Amendment. 603 U.S. at 49. The Supreme Court held that the plaintiffs failed to establish standing by "demonstrat[ing] a substantial risk that, in the near future, they will suffer an injury that is traceable to a [defendant] and redressable by the injunction they seek." *Id.* at 49–50. The Court rejected plaintiffs' argument that they suffered continued, adverse effects in the form of self-censorship from past restrictions because they failed to establish an injury traceable to the defendants. *Id.* at 73. Rather the plaintiffs had a "similar incentive to engage in self-censorship, given the

platforms' independent content moderation" so the injury at issue was not necessarily traceable to the Government defendants. *Id.* (emphasis added).

The Court finds that *Murphy* is not dispositive. Unlike *Murphy,* Plaintiffs' injury here would be redressed by a decision from the Court. There is no incentive for Plaintiff to effectively self-censor, and it is not Plaintiff who would be engaging in his own censorship, it is the government itself through the Warden. As opposed to *Murphy*, where the social media companies may well have reached the same decision regarding whether to engage in the speech at issue, there is no indication that Plaintiff would not engage in the protected conduct but for section 4571. Rather, granting injunctive relief in this circumstance would resolve Plaintiffs' alleged injury.

Turning to the pre-enforcement factors themselves, the Court finds that Plaintiff King has met the requirements to state an injury. Plaintiff King alleges that following his arrest in the July 2021 protest he refrained from participation in the August 2021 Demonstration and continues to fear retaliation by CDCR for his future protest action. Meanwhile, section 4571 remains in place. The State "ha[s] not disavowed enforcement if [plaintiffs] make similar statements in the future." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014). Finally, Plaintiffs have alleged that over 200 individuals have been incarcerated for violating section 4571. Although Defendants argue that Plaintiffs have not alleged how many of those individuals have been prosecuted for engaging in expressive conduct, the Court finds that consideration more relevant in the merits discussion. For now, the Court is satisfied that Plaintiff King has demonstrated a pre-enforcement injury and can seek prospective relief against CDCR Defendants.

The CDCR Defendants further argue, in their Reply brief, that Plaintiff King lacks standing to bring the causes of action premised on his arrest in the July 2021 protest – claims four, five, and six – because they have not shown how a prospective injunction will redress harms that occurred nearly four years ago. The Court agrees. Plaintiffs have not sought monetary damages, and the above-listed causes of action

are entirely focused on Plaintiff King's July 2021 arrest and do not explain how prospective relief would remedy this single, past injury. Accordingly, Plaintiffs lack standing to bring the fourth, fifth and sixth causes of action.

**2. Defendant Corpus**

Turning to Defendant Corpus, specifically, Plaintiff King concedes that he lacks standing and has failed to state a claim against her as it relates to the first and third causes of action. (Corpus Opp'n at 14.) Defendant Corpus further argues that Plaintiff King lacks standing to bring the second cause of action – a First Amendment overbreadth challenge. Plaintiff King argues that because overbreadth doctrine is rooted in a relaxation of application of standing in the context of the First Amendment, he may bring such a claim even though his expressive interests are not before the Court.

While Plaintiffs are correct that the standing doctrine is relaxed in the First Amendment context, they still must show that they "suffered an injury in fact and can satisfactorily frame the issues on behalf of these non-parties." *See Get Outdoors II, LLC v. City of San Diego, Cal.,* 506 F.3d 886, 891 (9th Cir. 2007). "Without this bare minimum of standing, the overbreadth exception would nullify the notion of standing generally in First Amendment litigation." *Id.* Here, the Court finds that Plaintiff King has not established such an injury to support an overbreadth claim. He makes no reference to the San Mateo County jails at all in the SAC such that he has shown any injury from conduct at those jails. *See Lopez,* 630 F.3d at 793 (denying overbreadth standing where the plaintiff failed to establish an injury in fact). Thus, the Court finds Plaintiff King lacks standing to bring the second cause of action.

**B. Plaintiff AOUON**

**1. CDCR Defendants**

Plaintiff AOUON alleges that it has third party associational standing to assert its claims against CDCR. The Court agrees. Associational standing arises where it is established that an association's "(1) [ ] members would otherwise have standing to

sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit.'" *Am. Unites for Kids v. Rousseau,* 985 F.3d 1075, 1096 (9th Cir. 2021) (citation omitted). Here, Plaintiff King is alleged to be a member of Plaintiff AOUON. Because the Court has found that he successfully alleged standing, the first prong for associational standing has been satisfied. Moreover, the interests AOUON seeks to protect – First Amendment rights to protest prison conditions – are germane to AOUON's purpose of "advocat[ing] for incarcerated and formerly incarcerated individuals and their families." (SAC ¶ 15.) Finally, AOUON has adequately established its ability to litigate the matter as neither the claims asserted nor the relief sought requires individual members' participation given the facial challenges to section 4571.

**2. Defendant Corpus**

Defendant Corpus argues that Plaintiff AOUON has failed to allege an injury traceable to her actions. Plaintiff AOUON disagrees, contending only that they have organizational standing to seek injunctive relief against Defendant Corpus. Ultimately, the Court agrees with Defendant Corpus and finds that Plaintiffs have not satisfied the standing requirements.

"[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp., v. Coleman,* 455 U.S. 363, 379 n. 19 (1982); *FDA v. Alliance for Hippocratic Medicine,* 602 U.S. 367, 369 (2024). Direct organizational standing can exist if the organization alleges that a defendant's actions "affected and interfered with [a plaintiff organization's] core business activities[.]" *Hippocratic Medicine,* 602 U.S. at 395. The Ninth Circuit has "further specified that an organization has direct standing to sue where a defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *Immigrant Defs. L. Ctr. v. Noem,* 145 F.4th 972, 975 (9th Cir. 2025) (internal citation and quotations omitted).

Here, Plaintiff AOUON alleges that from at least 2022 until the present, AOUON members have engaged in voting rights education and registration efforts for eligible voters in California jails, including the San Mateo County Jail. (SAC ¶ 25.) Plaintiff AOUON further alleges that in March 2024, AOUON members created a documentary about voting rights in jail, and one member appeared in a shot "in the vicinity" of the Macguire Correctional Facility" in San Mateo County. (*Id.*) Due to section 4571's proscriptions, however, he and the film crew remained a distance away from the jail which resulted in less favorable footage and added to the film production's time and costs. (*Id.*) Plaintiff AOUON further alleges its intent to continue engaging in such advocacy efforts. (*Id.* ¶ 26.)

The Court finds that these allegations do not adequately establish standing. First, as to the organizational injury, while the SAC discusses the filming experience of an AOUON member outside of a San Mateo facility, it does not sufficiently explain how Plaintiff AOUON's resources were diverted or mission was frustrated. Additionally, the Court finds that causation and redressability are not satisfied by the present allegations. The fact that Defendant Corpus may, pursuant to section 4571, grant such permission does not cause the alleged injury, which arises from the fact that permission is required in the first instance. Absent allegations about Defendant Corpus's authority as it relates to enforcing section 4571, there is nothing to suggest she has caused Plaintiff's injuries, or that an injunction against her would alleviate the constitutional problem. Thus, claims against Defendant Corpus are dismissed with leave to amend.

## III. Conclusion

For the reasons discussed above, the Court GRANTS Defendant Corpus's Motion to Dismiss for lack of standing. The Court also, GRANTS CDCR Defendants' Motion to Dismiss for lack of standing as to Plaintiffs' Fourth, Fifth and Sixth Causes of Action, and DENIES the remainder of Defendants' 12(b)(1) Motions.

////

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### I. Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief[,]" the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

### II. Discussion

#### A. First and Second Causes of Action – Overbreadth and Vagueness

Plaintiffs first and second causes of action allege that section 4571 is excessively vague and facially overbroad. Defendants argue that section 4571 is neither unconstitutionally vague nor overbroad. (*See* CDCR MTD at 12–18.) Again, section 4571 states "[e]very person who, having been previously convicted of a felony and confined in any State prison in this State, without the consent of the warden or other

officer in charge of any State prison. . .comes upon the grounds of any such institution, or lands belonging or adjacent thereto, is guilty of a felony." Cal. Pen. Code § 4571 (emphasis added). The Court begins with the overbreadth challenge and then proceeds with assessing vagueness. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 495–96 (1982) (directing courts to first analyze overbreadth and then determine vagueness).

**1. Overbreadth**

Defendants argue that section 4571 is not overbroad because it implicates conduct rather than speech, and any protected speech that is implicated is insubstantial. Plaintiffs argue that the section is overbroad because the ban on presence adjacent to an institution prohibits core First Amendment activity – protest and assembly. "In the First Amendment context,. . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Imperial Sovereign Ct. of Montana v. Knudsen,* 170 F.4th 820, 843 (9th Cir. 2026) (citations omitted).

First, the Court considers whether the ordinance at issue implicates the First Amendment at all. *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) (noting that, to properly analyze whether a law substantially burdens First Amendment activity, "a court must understand what kind of government actions the First Amendment prohibits"). "Not every ordinance that burdens expressive conduct implicates the First Amendment." *Nunez by Nunez v. City of San Diego,* 114 F.3d 935, 950 (9th Cir. 1997).

Here, section 4571 limits the presence of individuals convicted on felonies "adjacent thereto" certain facilities absent the permission of the warden, or other officer with similar authority. The Court finds that while not explicitly targeted toward First Amendment expression, Plaintiffs have adequately alleged that section 4571 implicates conduct "that has an expressive element," *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 703–04 (1986) (citation omitted) – namely, the ability for the formerly

incarcerated to protest prison conditions and other prison-related issues near the very prisons in which those conditions occur. Thus, the Court finds that section 4571 implicates the First Amendment.

Next, the Court considers "whether the ordinance burdens, "a substantial amount of protected free speech, judged in relation to [its] plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003). The Court finds that Plaintiffs have not plausibly made such a showing. Section 4571 applies to "all persons who enter" or are near a jail or prison, not just those who seek to engage in expression. Cal. Pen. Code § 4571. As such, the majority of the statute's applications are directed at those who do not seek to engage in expression. *See Hicks,* 539 U.S. at 123. Although Plaintiffs allege that over 200 individuals have been incarcerated for violating section 4571, there are no allegations about how many of those targeted individuals were engaged in expressive conduct. Thus, on the record before the Court, Plaintiffs have not demonstrated that section 4571 is overbroad. Accordingly, the Court GRANTS dismissal of Plaintiffs' second cause of action with leave to amend.

**2. Vagueness**

Defendants next argue that dismissal of the first cause of action alleging unconstitutional vagueness is warranted because section 4571 clearly applied to Plaintiffs' conduct, is based on hypotheticals, and on the whole is clear as to what it prohibits. Plaintiffs take issue with two clauses of section 4571: (1) the use of "adjacent thereto" (the "adjacency clause") and (2) the phrasing "any other place where prisoners of the State prison are located under the custody of prison officials, officers or employees (the "location clause")." (SAC ¶¶ 169, 171).

A law is constitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). "[T]he void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties

should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Where First Amendment freedoms are involved, "rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253–54. Even where expressive activity is regulated, "perfect clarity and precise guidance have never been required," *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). "Of significance here, a more stringent vagueness test should apply if a statute interferes with First Amendment rights, and if a statute imposes criminal sanctions." *Matsumoto v. Labrador,* 122 F.4th 787 (9th Cir. 2024) (cleaned up).

Beginning with the "adjacency clause the Court finds that Plaintiffs have plausibly stated a vagueness claim. Although the July Protest may have fallen with the clear bounds of the law's proscription, Plaintiffs include several allegations detailing their intention to continue their protest and advocacy efforts at different facilities across the State. (SAC ¶¶ 173–175.) Given the number of facilities to which the law applies, some of which are in urban areas with a relatively small footprint, and some in more rural areas with a conceivably less clear footprint, the Court finds it plausible at this stage of the proceedings that a person of ordinary intelligence would not understand what conduct is prohibited by section 4571.

Defendants cite to *People v. Seale,* 274 Cal. App. 2d. 107, to argue that the "adjacency clause" is not vague. *Seale* arose in the context of an appeal from the trial court's grant of a defendant's application for probation where defendant was convicted of violating California Penal Code § 4574. *Id.* at 109, 115. Section 4574 is a sister statute to section 4571 and addresses the knowing introduction of weapons into specified penal instructions, or within the grounds "belonging or adjacent to any such institution." *Id.* at 110 n.1; Cal. Pen. Code § 4574. The California Court of Appeal rejected the defendant's argument that the word "adjacent" was ambiguous, vague

and uncertain, stating that "[a]djacent is a word in common usage and is defined as 'near' or 'close'". *Id.* at 115. The court further explained:

> The fact that there may arise marginal cases in which it is difficult to determine whether certain ground is "adjacent" to a prison or jail is not a sufficient reason to hold that the use of such word makes the statute unconstitutionally vague and uncertain. (citation omitted). All that is required is reasonable certainty. (citation omitted).

*Id.* at 115. While informative, the Court does not find *Seale* dispositive on this issue. *Seale* involved a retroactive assessment of whether the defendant's presence was within "the grounds adjacent to the jail building." *See id.* The court of appeal determined that the "defendant was sitting on a concrete retaining wall which encloses a planter strip running along the front of the building" and was "3 feet from the building" such that "there can be no vagueness or uncertainty with respect to whether" he was "within the grounds adjacent to the jail building." *Id.* Here, however, Plaintiffs are intending to engage in future action and make arguments specifically related to their First Amendment rights.

The Court also recognizes the similarities between the use of "adjacent" in section 4571 and the law at issue in *Grayned v. City of Rockford,* 408 U.S. 104 (1972). There, the Supreme Court held that an anti-noise ordinance was neither unconstitutionally vague nor overbroad when the ordinance prohibited the "making of any noise or diversion which disturbs or tends to disturb" school sessions or classes "while on public or private grounds adjacent to any building" containing a school session or class. *Id.* at 107–08. The Court recognized that the ordinance "forbids this willful activity at fixed times – when school is in session – and at a sufficiently fixed place – 'adjacent' to the school.'" *Id.* at 111.

However, at least one California Court of Appeal has understood the Supreme Court's focus in *Grayned* "not [to be] on the location of the activity, but on whether the ordinance defined clearly enough what conduct was prohibited and whether it was

overly restrictive of expressive activity." *People v. Barajas*, 198 Cal. App. 4th 748, 760 n. 8 (2011). The Court agrees with that interpretation of *Grayned*. As the Supreme Court noted:

> The words of the [] ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' but we think it is clear what the ordinance as a whole prohibits. Designed, according to its preamble, 'for the protection of Schools,' the ordinance forbids deliberately noisy or diversionary activity that disrupts or is about to disrupt normal school activities. It forbids this willful activity at fixed times—when school is in session—and at a sufficiently fixed place—'adjacent' to the school. Were we left with just the words of the ordinance, we might be troubled by the imprecision of the phrase "tends to disturb".
>
> * * * * * * * *
>
> [W]e think it proper to conclude that the Supreme Court of Illinois would interpret the [ ] ordinance to prohibit only actual or imminent interference with the 'peace or good order' of the school."

*Grayned*, 408 U.S. at 110–12 (cleaned up). Since the purpose of the ordinance was to prohibit actual or imminent interference, the phrase "adjacent to" was necessarily limited to locations that would actually result in such interference. Similarly, in *Cox v. Louisiana*, the law at issue that prohibited picketing or parading "in or near" a courthouse was expressly limited by a *mens rea* provision, which required the individual to have the intent to interfere, obstruct or impede justice or to influence any judge, juror or witness. 379 U.S. 559, 560 (citing LA Rev. Stat. § 14:401 (Cum. Supp. 1962)). *Cf. Counterman v. Colorado*, 600 U.S. 66, 75–77 (noting that a *mens rea* requirement can lessen "the hazard of self-censorship by compensating for the law's uncertainties") (cleaned up).

Unlike in *Grayned* and *Cox*, the State points to no limiting principle that would guide how a reasonable person would construe the word "adjacent." Accordingly, Court finds that Plaintiffs have plausibly stated a vagueness claim at this stage.

Turning to the "location clause" however, the Court finds that Plaintiffs' vagueness challenge fails. The locations identified by Plaintiffs in the SAC are largely within the clear meaning of the provision. Plaintiffs allege that the July Protest took place near CMF, and that "the protest called for the release of Ruchell 'Cinque' Magee, a political prisoner who, at the time, had been incarcerated in California prisons for 51 years for his role in the Marin County Courthouse shooting in 1970." (SAC ¶ 67.) The Court reasonably infers from these allegations that Plaintiffs were aware that CMF was a "place where prisoners of the State prison are located under the custody of prison officials, officers or employees," Cal. Pen. Code § 4571. Moreover, Plaintiffs' August Demonstration protest was located at San Quentin State Prison, which unambiguously falls within the statute's purview. (SAC ¶ 136.) The Court is also unconvinced by Plaintiffs' arguments given that they appear to seek out locations where incarcerated people are present, illustrating that they understand what the location clause entails. Thus, the Court does not find the "location clause" vague. Thus, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' First Cause of Action as to the adjacency clause.

**B. Third Cause of Action – First Amendment Violation**

Plaintiffs' Third Cause of Action alleges a violation of the First Amendment because it infringes on their freedom of speech and freedom of assembly. Defendants explicitly challenge Plaintiffs characterization of section 4571 as an unreasonable time, place, and manner restriction on speech. (CDCR MTD at 18–19.) Specifically, Defendants argue that section 4571 does not implicate expressive conduct, and even if it did, it would survive strict scrutiny.

As an initial matter, it appears that Plaintiffs advance both an as applied and facial challenges to section 4571 in their third cause of action. The classification of a challenge "as facial or as applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy[.]'" *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). The Court makes this

finding based on language in the SAC pertaining specifically to Plaintiffs' conduct (SAC ¶¶ 196–200) and the request for a remedy that declares the law unconstitutional as applied to the litigants' particular speech activity and in its entirety (*see id.* at p. 54).

**1. As Applied Challenge**

"The First Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides: "[The States] shall make no law . . . abridging the freedom of speech." *Meinecke v. City of Seattle,* 99 F.4th 514, 521 (9th Cir. 2024) (citing U.S. Const. amend. I.) The Ninth Circuit evaluates First Amendment claims in three steps: (1) determine whether the relevant expressive conduct is protected by the First Amendment; (2) identify the nature of the forum; and (3) assess whether the justifications for exclusion from the relevant forum satisfy the requisite record. *Id.*

The Court does not consider the first two steps to be meaningfully at issue. First, contrary to Defendants' arguments, Plaintiffs' desire to assemble and protest near state correctional facilities is protected by the First Amendment. *See Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996) ("Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment" (citations omitted)). Second, the relevant forum — lands "adjacent" to state correctional facilities, which Plaintiffs allege consists of public spaces such as sidewalks involve "quintessential traditional public forums." *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003). In such public spaces, the government may only impose reasonable content-neutral restrictions on time, place and manner of protected speech. *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995). "To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content-neutral; (2) it must be narrowly tailored to serve a significant governmental interest; and (3) it must leave open ample alternative channels for communication of the information." *Berger v. City of Seattle*, 569 F.3d 1029, 1036 (9th Cir. 2009) (citing *Ward v. Rock Against*

*Racism,* 491 U.S. 781, 791 (1989) and *Clark v. Cmty. for Creative Non-Violence,* 468 U.S. 288, 293 (1984)).

**i. Content Based/Content Neutral**

Plaintiffs contend that section 4571 is a content-based restriction subject to strict scrutiny, and an invalid time, place, and manner restriction. Defendants primarily argue that the law is content-neutral and that it can be justified without reference to the content of the regulated speech.

A content-based law is one that "target[s] speech based on its communicative content" or "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 163 (2015). The Supreme Court has cautioned that "speaker-based regulations are all too often content based regulations in disguise." *Boyer v. City of Simi Valley,* 978 F.3d 618, 621 (9th Cir. 2020) (citation and internal quotation marks omitted). "The crucial first step in determining whether a law is content based is to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys. *Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017) (citation and internal quotation marks omitted). Where a law is facially neutral, but "cannot be justified without reference to the content of the regulated speech" or "was adopted by the government because of disagreement with the message the speech conveys," courts also apply strict scrutiny review. *Id.* at 670 (citation omitted).

The Court finds that section 4571 is content neutral on its face. Even assuming that a speaker-based distinction exists here, the law does not explicitly apply to any communicative content. Moreover, Plaintiffs have not plausibly alleged that justification of the law is based on the content of a speaker's message or that the law was enacted based on the message the speech conveys. Rather, as discussed previously, section 4571 has many applications that do not implicate traditional public fora.

*////*

**ii. Narrow Tailoring and Significant Public Interest**

"For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (internal quotation marks omitted). "Such a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests." *Id.* (internal quotation marks omitted). "But the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (internal quotation marks omitted).

Here, Defendants argue that section 4571 was enacted to protect the safety and order of the jail. This may well be a legitimate state interest. *See People v. Gjersvold,* 230 Cal. App. 4th 746, 751 (2014) (explaining that "section 4571 was enacted to allow the warden or other officer in charge to consider the ex-convict's criminal history and to make an individualized determination whether the ex-convict's entry would affect the safety and order of the jail."). However, it is Defendant who "bears the burden of showing that the remedy it has adopted does not burden substantially more speech than is necessary to further" this legitimate interest. Defendants' bare assertions, without any reasoning, that the law is "narrowly tailored to serve a significant interest" do not meet such a burden. *See Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994) ("When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.") (internal quotation marks and citation omitted). At this stage in the proceedings, the Court cannot conclude, as a matter of law, that section 4571 is narrowly tailored. *Dorsett v. City of San Diego*, No. 24-cv-00813-AJB-AHG, 2025 WL 591073, at *12 (S.D. Cal. Feb.

24, 2025) ("At the motion to dismiss stage, accepting Plaintiffs' allegations as true, and construing all inferences in favor of Plaintiffs, without any evidence from the [defendants] proving otherwise, the Court cannot conclude as a matter of law that the City's expressive activity areas are narrowly tailored.").

### 2. Facial Challenge

Although Plaintiffs have stated a plausible as-applied challenge, the Court finds that their facial attack fails. Plaintiffs have not demonstrated that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody*, 603 U.S. at 723. Rather, the primary argument is focused on section 4571's application to Plaintiffs and their particular First Amendment conduct. Accordingly, the Court declines to allow Plaintiffs' to proceed on a facial First Amendment claim.

* * *

Because the Court finds that Plaintiff has plausibly alleged that section 4571 is not narrowly tailored, the Court DENIES dismissal of Plaintiff's third cause of action as to the as-applied challenge.

## III. Eighth Cause of Action – Conspiracy to Violate Constitutional Rights

Defendants also argue that Plaintiffs have failed to state a plausible claim for conspiracy to violate constitutional rights. To state a claim for conspiracy to violate constitutional rights under section 1983, a plaintiff "must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). The plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights. *Crowe v. Cnty. of San Diego,* 608 F.3d 406, 440 (9th Cir. 2010) (citation omitted). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.*

Here, Plaintiffs put forth allegations related to the CDCR Defendants communicating about the investigation and decision to arrest Plaintiff King in retaliation for his political activity, speech and organizing activity against CDCR or his classification as a "Black Identity Extremist." (SAC ¶¶ 222–226.) However, almost every allegation is premised "on information and belief." Aside from Plaintiff King's arrest at the July Protest, there are no concrete allegations on which the Court can rely. *See Solis v. City of Fresno,* No. 1:11-cv-00053-AWI, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012). Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to the Eighth Cause of Action without leave to amend.

## IV. Conclusion

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motions to Dismiss as follows:

1. Defendant Corpus's Motion to Dismiss (ECF No. 101) is GRANTED;
2. CDCR Defendants' Motion to Dismiss (ECF No. 102) under Rule 12(b)(1) is GRANTED as to Plaintiffs' Fourth, Fifth, and Sixth Causes of Action;
3. CDCR Defendant's Motion to Dismiss (ECF No. 102) under Rule 12(b)(6) is GRANTED as to Plaintiff's First and Eighth Causes of Action and DENIED as to Plaintiffs' Second and Third Causes of Action.
4. Plaintiffs' Seventh Cause of Action is DISMISSED.
5. Within 21 days of this Order, Plaintiffs may file a Third Amended Complaint or inform the Court of its intention to proceed on the SAC.

IT IS SO ORDERED.

Dated: **August 26, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – BROWN24cv01281.mtd_v3